[No. 1446.]

## JOHN ROEDER, Appellant, *v.* CHARLES STEIN, Respondent.

FINDINGS—WITHIN THE ISSUES—APPROPRIATION, DIVERSION, WASTEFUL USER OF WATER—DAMAGES.—In an action to restrain the wrongful diversion of water, and for damages for past diversion, where the complaint alleges plaintiff's prior appropriation, defendant's diversion, and the amount of damages thereby occasioned, and the answer consists simply of denials and an allegation of appropriation by defendant, a finding that plaintiff's manner of using the water has been wasteful, and that all or a part of his damage has been occasioned thereby, is within the issues.

USE OF WATER—POWER OF COURT TO REGULATE FUTURE USE.—In such a case, where it appears that the plaintiff made the first appropriation, by means of a certain ditch, of enough water to irrigate 125 acres of land, and that, subject thereto, the defendant has made an appropriation, the court has the power to direct that the plaintiff must use the water through that ditch, or by other means that will not waste more than an ordinary ditch.

IDEM—RIGHTS OF FIRST APPROPRIATOR—SURPLUS WATER.—The first appropriator is only entitled to the water to the extent that he has use for it when economically and reasonably used. When he has that, he cannot prevent others from making use of the surplus.

IDEM—OBLIGATIONS OF FIRST APPROPRIATOR AS TO SUBSEQUENT ACQUIRED RIGHTS.—After others have acquired rights to the use of the water of a stream, the first appropriator for irrigation purposes cannot, to their detriment, change the method by which he conveys it to his land, so as to increase the waste that naturally occurs in such conveyance.

FINDINGS OF FACT—CONCLUSIONS OF LAW—WHAT SHOULD COVER.—Findings of fact and conclusions of law should cover the issues in the case, and be made separate from the opinion of the judge.

ANSWER—WHEN VERIFIED, SHOULD NOT DENY TRUE ALLEGATIONS.—A verified answer should not deny facts unquestionably true. Parties doing so lay themselves liable to the penalties of the criminal law. (Syllabus by BIGELOW, C. J.)

APPEAL from the District Court of the State of Nevada, Lincoln county; *G. F. Talbot*, District Judge:

Action by John Roeder against Charles Stein. Findings for defendant, and from an order refusing a new trial plaintiff appeals. Affirmed.

The facts sufficiently appear in the opinion.

*George S. Sawyer*, for Appellant:

I. The decision is against law. First: The original findings of fact are entirely outside of the issues made by the pleadings, and, consequently, no judgment or decree based upon them could be upheld. (*Marshall* v. *Golden Fleece*, 16 Nev. 173-177; *Ortega* v. *Cordero*, 88 Cal. 225.) Second: The additional findings are contradictory of the original findings, and, taken together, they cannot support a judgment or decree. (*Authors* v. *Bryant*, 22 Nev. 242.)

II. The court below erred in admitting or considering any testimony in relation to water rights and ditches other than the particular one in controversy by the pleadings.

III. The decision is not supported by, but is contrary to, the evidence. It is uncontradicted that the plaintiff used the water, the diversion of which is complained of, for more than five years prior to the conversion, which is also uncontradicted. The plaintiff testifies that the diversion damaged him much more than the *ad damnum* clause of the complaint charges, and this is uncontradicted. The nearest the defendant comes to contradicting it is that plaintiff might have decreased the damage by getting water somewhere else. Under these facts, as shown by the testimony, the plaintiff should have had a decision in his favor, in all respects as prayed for in his complaint. The additional findings are entirely unsupported by the evidence, and are contrary to the theory of either plaintiff or defendant. They would virtually entitle plaintiff to the judgment and decree prayed for, for it is not contended that enough water comes down from the Hiko Hill to water 145 acres of land, to which, according to the additional findings, plaintiff is entitled by virtue of priority of appropriation. (*Smith* v. *Logan*, 18 Nev. 154; *Jewett* v. *Mahan*, 20 Nev. 89; *Reno S. Works* v. *Stevenson*, 20 Nev. 269.)

*Thomas J. Osborne*, for Respondent:

I.   The findings of fact are not outside of the case made and embraced within the issue, and the cases of *Marshall* v. *Golden Fleece M. Co.*, in 16 Nev., and *Ortega* v. *Cordero*, 88 Cal., cited by appellant, do not sustain this objection.

II.   The principle of equitable estoppel invoked in the latter case applies here.  The case at bar was tried throughout on the theory that plaintiff relied on water from the Hiko spring, conveyed through the Ferguson ditch, the waters of which were composed, in part only, of the water escaping from the mill ditch, and this issue, as shown by the record on appeal, " was actually and intentionally tried by the introduction of pertinent evidence, and that appellant here consciously participated and induced the respondent to believe the issue had been properly made."

III.   In the absence of any objection thereto, the court did not err in admitting testimony relating to other water ditches than that mentioned in the complaint, and no objection being made to such testimony at the trial, appellant cannot raise it for the first time on appeal.  The consideration of the testimony was necessary, touching as it did on matters essential to the cause of action and naturally following the allegations of the complaint.  (*Jones* v. *Goodenough*, 7 Nev. 324; *Estis* v. *Simpson*, 13 Nev. 472; *Longabaugh* v. *V. & T. R. R. Co.*, 9 Nev. 271; *Reese* v. *Kinkead*, 20 Nev. 65.)

By the Court, Bigelow, C. J.:

The complaint alleges prior appropriation of the water of a certain stream for irrigation purposes, defendant's diversion of it, and that plaintiff has been damaged thereby in the sum of $500.  The answer denies the appropriation or damage, and alleges that defendant has appropriated, and is entitled to use, enough of the water to irrigate forty acres of land.

The court found that the plaintiff had, through the Ferguson ditch, made the first appropriation to the extent of irrigating one hundred and twenty-five acres; that subsequent thereto, and in 1890, the defendant had appropriated enough to irrigate forty acres; that since 1890, and during the time the defendant has been using the water, the plaintiff has

allowed a larger amount than that diverted by defendant to run to waste, by running it into a large pond, or lake, from which he used it, instead of running it directly through the ditch to his land. As conclusion of law (apparently, for the conclusion of fact, of law, and the court's opinion are all thrown together, so that it is difficult, if not impossible, to separate one from the other) the court found that the plaintiff had the first right to enough of the water to irrigate one hundred and twenty-five acres, "said water to be conveyed to the plaintiff's land through the Ferguson ditch, or by other ditches or means that will not waste more than an ordinary ditch." It also found that "plaintiff having failed to keep his ditch in repair, or to prevent the water from spreading over defendant's meadow and running into the lake, is not entitled to any damages," and that subject to plaintiff's rights, the defendant is entitled to enough water to irrigate forty acres.

No decree has been entered, and the appeal is from an order refusing the plaintiff a new trial.

The appellant claims that the findings are not within the issues made by the pleadings, but as there has been no oral argument, and in his brief he has not specified the particular finding or findings to which he objects, it is not easy to determine to just what he refers; but probably it is to the finding that he has wasted the water, and to the direction that he must thereafter use it in a particular manner, as there can be no possible question of the pertinency of the other findings.

But, although there is nothing said in the pleadings upon this matter, it seems to us that the question as to the waste of the water, both past and future, was clearly in the case. In the first place, the complaint alleges $500 damages, and the plaintiff testified to more than that amount of loss to his crops caused by the want of water. But if he had permitted a portion of the water that did come to him to run to waste, he could not hold the defendant responsible for the damage thereby occasioned. The defendant is only responsible for the damage occasioned by his own acts. The defendant denied that his acts had caused the plaintiff any damage whatever, and in support of that denial it was

proper for him to show, if he could, that a portion or all of the plaintiff's loss was the result of his own uneconomical use of the water, and consequently it was proper for the court to find whether such was the case.

The learned trial judge seems to have been of the opinion that if the plaintiff wasted as much water as the defendant had diverted, that that would be a complete answer to the plaintiff's claim for damages. While we cannot agree with that view and are of the opinion that if defendant's acts had caused the plaintiff damage in addition to that occasioned by his own negligence, the defendant would be responsible for that part, still the finding, as far as it goes, is within the issues. It covers at least the loss upon forty acres of the plaintiff's land, as the finding is that defendant irrigated that amount, and that plaintiff wasted more than the amount of water used by defendant, and it may have been intended to cover all of plaintiff's loss.

Possibly the appellant's counsel is of the belief that the plaintiff, having made the first appropriation, is entitled to have the water come down to him to the extent of his appropriation, whether he has use for it or not. If so, he is mistaken. Water is too precious in this arid climate to permit its being unnecessarily wasted. The findings do not show how much water there is in the stream altogether, or whether there is more than enough to irrigate the plaintiff's one hundred and twenty-five acres. If there is not, then when he is irrigating that amount he is entitled to the use of it all. The same is the case when he is irrigating less than one hundred and twenty-five acres, if he needs it all for what he does irrigate. But whatever he may be irrigating he is only entitled to the amount he needs, economically and reasonably used, and when he has that, he cannot prevent others from using the surplus. (*Barrows* v. *Fox*, 98 Cal. 63; *Natoma Water & M. Co.* v. *Hancock*, 101 Cal. 32.)

Nor do we think that there was any error in requiring the plaintiff to use the water in any particular manner hereafter. The evidence shows that the original method of the plaintiff's use during the irrigation season was through the Ferguson ditch, and that this is the most direct and economical method of conveying it to the land during that time. (During the

winter time the plaintiff runs the water into the lake, which he uses as a reservoir. This use is not in question here.) Running it through the ditch continued to be the principal method of using it up to 1890, when defendant made his appropriation. Since then the system has been changed so that the principal method is first to turn it into the lake and then use it from thence, and this is what the court finds has caused the unnecessary waste. As already remarked, water is too precious to permit it being wasted. Conveying it through a ditch even will always cause some loss, and if the distance is great, or the soil loose or porous, the loss will be considerable. This, within any reasonable expense, is generally unavoidable. But, however this may be, if the appropriation had been made before others acquired rights in the stream, after that no change can be made to their detriment. The first appropriator must continue to use it in at least as economical a manner as before, and cannot change the method of use so as to materially increase the waste. Such a change may be forbidden, and parties "may be compelled to keep their flumes and ditches in good repair, so as to prevent any unnecessary waste." (*Barrows* v. *Fox, supra.*) This is all that has been done here.

There are two matters of practice involved in this case to which we desire to call the attention of the district courts and of the profession. The first is a failure to make distinct findings of fact and conclusions of law, separate from the opinion of the judge as to what the decision should be upon those facts. The writer of this opinion confesses that such was very largely his own custom when upon the district bench, and that he then saw no objection to it, but experience in the appellate court has demonstrated that serious objections do exist. It not only adds considerably to the labor of examining cases upon appeal, which may be deemed a minor consideration, but it increases the liability that the facts will not be correctly understood, and hence result in a miscarriage of justice.

The trial judge usually decides upon some one point which he considers controlling, and this point is the only one that will generally be fully covered in an opinion. Then if the appellate court takes a different view of that point, as to the

other facts the court is left entirely in the dark, or it must pick them out from the evidence, which can never be as well understood as when heard in court, as given and illustrated by the witnesses. The findings should cover all the issues in the case, and should be quite separate from the opinion. We do not say this to discourage the writing of opinions, as we often find them of great assistance, and it is always satisfactory to know just what view was taken of the case by the trial court.

The other is a feature that we think deserves particular censure from the courts—the broad and unqualified denials in the answer that the plaintiff and his grantors had been the owners or in possession of the lands described in the complaint, or had appropriated any part of the water in controversy. It seems to have been admitted upon the trial that he did own the land, and had been in the possession thereof for many years, and it was proven beyond question that he had appropriated a large portion, if not all the water. The fact that the answer was made upon information and belief does not help the matter any, for the evidence shows that the defendant must have known all about it, and could have had no such information or belief. If the attorney knew of the facts, he is even more culpable than the client, for drawing and permitting him to swear to such an answer. The reason for providing for verified pleadings is that facts that are true shall be admitted, and thereby the parties saved the expense of proving them, and the court and all connected with the case the loss of time occasioned by it being done. Such practice as this, although unfortunately too common, is utterly subversive of the principles of the reformed procedure, and really subjects the parties to the penalties of the criminal law. The defense here could have been as well made under a truthful answer, as under one so largely false.

The order appealed from is affirmed.