[Civ. No. 263.   Third Appellate District.—September 27, 1906.]

# Mrs. T. G. ROGERS et al., Respondents, v. H. OVER-ACKER, Jr., Appellant.

WATER RIGHTS—RIPARIAN OWNERS—USE BY LOWER OWNER NOT AD-VERSE TO UPPER OWNER.—A lower riparian owner cannot acquire a right either by prior appropriation or by prescription or by ad-verse user as against an upper riparian owner, whose rights ante-date the appropriation and user, and the mere nonuser of the water by the upper owner cannot make the use of the lower owner ad-verse, or strengthen his claim of appropriation or prescription.

ID.—SUIT BY LOWER OWNERS TO ENJOIN DIVERSION BY UPPER OWNER.—The lower owners are entitled to maintain a suit to obtain a judgment restraining the upper owner from diverting all of the waters of the stream for irrigating his land riparian to the stream.

ID.—FAILURE TO FIND UPON DEFENSE.—Where the complaint of the lower owners alleged no priority of user of the waters for domestic pur-poses over the defendant, the failure of the court to find upon allegations of the upper owner in his answer "that it is neces-sary for defendant to use said waters on said land in order to keep the alfalfa growing on said irrigated tract alive, and if said water is not used to a reasonable extent on said lands great and irreparable injury will result to the defendant thereby," was not error.

ID.—EQUALITY OF RIGHT—DETERMINATION OF RIGHTS.—The plaintiffs having an equal right to take the water, and it being admitted that at times there is abundance of water flowing in the creek to supply their wants and those of the defendant for irrigating his alfalfa, it becomes necessary to know just how much water must flow down the creek to plaintiffs' lands, for they are entitled to just so much and the defendant to so much.

ID.—UNCERTAIN JUDGMENT NOT DETERMINING RIGHTS.—A judgment which enjoins the defendant from diverting such waters "for the purpose of irrigation at such times or in such quantity or amount or in such manner as will prevent the waters of said Conn creek from flowing to and upon the riparian lands of plaintiffs . . . in a sufficient quantity to supply plaintiffs with fresh water for their natural wants and usual domestic purposes, including the watering of livestock," etc., is not a judgment that informs either plaintiff or defendant just what to do, and is fatally uncertain, in not ad-judicating the rights of the parties or determining what amount is due to the plaintiffs.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial.   H. C. Gesford, Judge.

The facts are stated in the opinion of the court.

Mullaney, Grant & Cushing, and F. E. Johnston, for Appellant.

W. F. Henning, for Respondents.

BUCKLES, J.—This is a suit in equity to enjoin the defendant from diverting certain waters from Conn creek in Napa county.   After a trial had the court made findings and entered judgment therein in favor of the plaintiffs.   The defendant appeals from the judgment and from an order denying his motion for a new trial.

The complaint alleges that Conn creek has its source in Howell mountain in said Napa county and runs thence in a natural defined channel in a southerly direction until it enters Napa creek near the town of Yountville and flows along or over the lands of both plaintiffs and defendant a distance of about four miles, and that the lands of defendant are nearer the source of said Conn creek and higher up on the said creek than any of the lands of plaintiffs.   That the lands of plaintiffs and defendant have always been used by themselves and their predecessors in interest for stock-raising, grazing and farming, and the waters of said creek have always been used by them for domestic use other than irrigation, until about two years ago, and then only the defendant has at times diverted and claims the right to divert all of the water of said creek so as to flow the same entirely upon his own lands solely for the purpose of irrigation, which diversion is by means of dams erected in said creek, and flumes and ditches leading the water out and upon his said land, and has thus deprived the plaintiffs of the use of said water and that there is now no water running in the channel of said creek on or by their lands.   That they need said water for their stock and pasturage; that they will suffer irreparable loss unless defendant be enjoined from using said water for irrigation.   That defendant has no right, by purchase, prescription or otherwise, to said water other than as

a riparian owner, and no right to deprive plaintiffs of the natural flow of the water of said creek in the natural channel thereof.

The answer alleges that defendants, grantors and predecessors in interest have from time to time for many years diverted the waters of said creek for purposes of irrigation at a greater or less extent than the same have been used by him, and that he used the ditches made and used by his grantors. Denies that defendant at any time diverted, or claimed the right to divert, all the waters of said creek, and has never at any time diverted more than one-half of said waters, and that for irrigation, and that he never deprived the plaintiffs of the use of said waters. That when diverted he uses said waters for irrigation and for domestic purposes. Denies that plaintiffs are dependent upon the waters flowing in the channel of said creek for watering their stock and other domestic uses. Denies that he is now diverting, or ever has diverted, the whole of said water, and alleges that he does and has diverted only a reasonable portion thereof, and alleges that there is water enough flowing in the channel of said creek to supply all the riparian owners along the said creek with ample water for domestic use and their stock and to irrigate more lands than have ever been irrigated by the defendant. Alleges that by reason of the failure of the complaint to show that the waters claimed by plaintiffs are to be used on the lands riparian to said creek, and by reason of the failure of plaintiffs to allege the amount of stock which they claim the right to water from said creek, the defendant is unable to determine the actual amount of water claimed by them. Alleges that the tract of land planted to alfalfa which he diverts the water to irrigate, is land belonging to defendant and riparian to said creek and naturally drained into said creek, and that it is necessary to use a reasonable amount of said water to keep the alfalfa growing on his said land so irrigated. There is no averment in either complaint or answer of the amount of water required by either plaintiffs or defendant, nor of the approximate amount of water flowing in said creek. It does appear, however, that from about July 15, 1902 and 1903, to the time when the cool weather comes the water has ceased to flow upon the surface of the channel of said creek at some places below the lands of defendant.

The court finds as matter of fact that all the lands described are riparian to said creek. That all these lands have always been used for stock-raising, grazing and farming, and the waters of said Conn creek have been used by plaintiffs for domestic purposes and watering stock to a greater or less extent, and the waters of said creek have never been used to any appreciable extent for irrigation until within the years 1902-03. That plaintiffs are dependent upon the water of said creek during the dry season of the year for watering their livestock. That in July, 1902, defendant diverted a considerable portion of the water of said creek out of the channel to and upon his lands through a flume six by eight inches, for purposes of irrigation. Did this again in 1903. That for twenty or thirty years before the diversion of said water by defendant the waters of said creek had flowed upon the said lands of plaintiffs, so that during the dry season of the year there was abundance of fresh water in said creek for their domestic purposes and watering their stock, and that by reason of diverting said waters by defendant for irrigating purposes in the dry season 1902-03 the plaintiffs were deprived of necessary water for domestic use and watering their stock.

As conclusions of law the court found as follows, to wit: "The right of plaintiffs to a sufficient flow of water of Conn creek, in the county of Napa, state of California, in the natural channel thereof to and upon the riparian lands of plaintiffs . . . all seasons of the year sufficient to supply plaintiffs with fresh water for their natural wants and usual domestic purposes, including the watering of livestock kept or maintained by plaintiffs upon their said riparian lands are primary and paramount rights to the right of defendant to divert or use any of the waters of said Conn creek for the purposes of irrigation. Plaintiffs are entitled to judgment enjoining defendant from so diverting such quantity of the waters of said Conn creek for the purposes of irrigation as will prevent said creek from flowing to and upon the riparian lands of plaintiffs in quantities sufficient to supply plaintiffs with fresh water for their natural wants and usual domestic purposes, including the watering of livestock kept or maintained by them on their said riparian lands."

The court does not find the amount of water each riparian owner is entitled to but finds the defendant's diversion and

use of said waters for irrigation purposes (one-half or one-third) as shown by defendant's answer and by the evidence is not reasonable, and if continued would cause plaintiffs irreparable injury. The judgment enjoins defendant from diverting the waters of Conn creek from the natural channel thereof upon his lands for the purposes of irrigation at such times or in such quantities or amounts, or in such manner, as will prevent such waters from flowing to and upon the riparian lands of plaintiffs in a *sufficient quantity* to supply plaintiffs with fresh water for their natural wants and usual domestic purposes, including the watering of livestock kept or maintained by the plaintiffs on their said riparian lands.

All the testimony for the plaintiffs showed that the water ran in the channel of Conn creek in abundance for their use for domestic purposes and for watering their stock for all the years up to 1902, and that during 1902 and 1903 and until the suit was commenced in September, 1903, the water ceased to run by their lands about July and August of those years, and was not sufficient for all their needs. There was no substantial conflict in the evidence for the plaintiffs. The testimony for the defendant showed that defendant put in his first dam at his place in July, 1902, and during 1902 he took out about one-third of the volume of the water flowing in the said creek. When cutting the alfalfa the water in the flume was allowed to run onto to waste land. Irrigated about twelve acres of alfalfa. His flume connected with an old ditch, which he cleared out and which he testified looked like it had twenty years' growth of brush, etc. Never used the water much on other places than alfalfa, but let it run on one place below his cellar and on another place for pasture. He testified: "During July and August the amount flowing in Conn creek gradually lessens, but there is a large flow all summer and as soon as the days begin to get cooler and the nights get longer the water in the creek begins to rise." This testimony applies simply to conditions existing on defendant's land. "All the water that passes my dam and all the water that flows or seeps back from the alfalfa patch flows down Conn creek into the lands of plaintiffs. . . . This irrigated tract . . . is on the northeast side of Conn creek and . . . is riparian to the creek . . . without irrigation it would be impossible to keep the alfalfa alive."

4 Cal. App.—22

Appellant claims error because the court did not find on certain issues raised by his answer. There is no specific finding as to this allegation in the answer, to wit: "That it is necessary for. defendant to use said waters on said land in order to keep the alfalfa growing on said irrigated tract alive, and if said water is not used to a reasonable extent upon said lands, great and irreparable injury will result to this defendant thereby."

If it was not necessary to irrigate the land, then clearly defendant had no right to divert the water of the creek onto it. And if the court's view that the lower riparian owners had the paramount right to all the water flowing in said creek, then this allegation of the answer would become an immaterial allegation and no finding would be necessary thereon. (*Louvall* v. *Gridley,* 70 Cal. 511, [11 Pac. 777].) There was no testimony of a prior use by defendant or his predecessors of the waters of said creek for purposes of irrigation except what might be inferred from what defendant said about running the water he diverted into a ditch which had a twenty-year old growth of brush in it, and we think it can hardly be said that this bit of testimony furnished any evidence that defendant's predecessors in interest had ever diverted these waters for purposes of irrigation. The court found as follows: "Before the diversion of water of said creek by defendant for a period of twenty or thirty years the water of said creek had always flowed to and upon the lands of all these plaintiffs, so that during the dry season every year there was maintained on their said premises abundant fresh water for domestic purposes, including the watering of their stock."

Then in its conclusions of law finds: "The rights of plaintiffs to a sufficient flow of water of Conn creek . . . in the natural channel thereof ·to and upon the riparian lands of plaintiffs . . . in a sufficient quantity at all seasons of the year sufficient to supply plaintiffs with fresh water for their natural wants and usual domestic purposes, including the watering of livestock kept or maintained by plaintiffs upon their said riparian lands are primary and paramount rights to the right of defendant to divert or use any of the waters of said Conn creek for the purposes of irrigation."

If the law is as the court thus finds, then no matter how it may have found as to said allegation the judgment must

have been for plaintiffs. But we do not so understand the law. The rule seems to be as laid down in *Bathgate* v. *Irvine,* 126 Cal. 135, [77 Am. St. Rep. 158, 58 Pac. 442], and *Hargrave* v. *Cook,* 108 Cal. 72, [41 Pac. 18]. In the first case it was said, approving the latter case, that a lower riparian proprietor cannot acquire a right, either by prior appropriation or by prescription or adverse user, as against an upper riparian proprietor whose rights antedate the appropriation and user, and the mere nonuser of the water by the upper proprietor and his permitting the water to pass down to the lands of the lower owner cannot make the user of the lower owner adverse or strengthen his claim of appropriation or prescription. The complaint alleges no priority of user of said waters for domestic purposes over the defendant. We do not think the court erred in failing to make a finding of the said allegations.

The plaintiffs were entitled to a judgment restraining the defendant from diverting all the water from said creek for irrigating his said land riparian to said creek.

The plaintiffs having an equal right to take the water, and it being admitted that at times there is abundance of water flowing in the creek to supply their wants and the defendant for irrigating his alfalfa, and plaintiffs claim that at times only enough for the use of plaintiffs, it becomes necessary to know just how much water must flow down said creek to their lands, for they are entitled to just so much and the defendant to so much. A judgment which enjoins the defendant from diverting such waters "for the purpose of irrigation, at such times or in such quantity or amount, or in such manner, as will prevent the waters of said Conn creek from flowing to and upon the riparian lands of plaintiffs described in the amended complaint in this action in a sufficient quantity to supply plaintiffs with fresh water for their natural wants and usual domestic purposes, including the watering of livestock kept or maintained by plaintiffs upon their said respective lands," is not a judgment that informs either plaintiffs or defendant just what to do. It must be observed that there is no adjudication whatever as to the amount of water the plaintiffs will need, no mention of the number of stock to be watered, and no means is provided in the judgment by which the defendant can determine just how much water he must let flow down the creek in

order that plaintiffs may have their proper and necessary amount of water. The judgment is fatally uncertain, and although it follows the findings, it gives no information as to the quantity of water which is due to plaintiffs. In *Riverside Water Co.* v. *Sargent,* 112 Cal. 230, [44 Pac. 560], which was an action to determine the relative rights of plaintiffs and defendant to the use of water flowing in the Santa Ana river, the court said: ''The decisions of this court establish that in cases like the present the findings and judgment must fix the extent of the superior right, viz., the quantity of water to be allowed to the party whose claim is paramount; otherwise the judgment fails to attain the certainty necessary to an estoppel upon the main subject of the litigation.'' (Citing *Dougherty* v. *Haggin,* 56 Cal. 522; *Alhambra Water Co.* v. *Richardson,* 72 Cal. 604, [14 Pac. 379]; *Lakeside. Ditch Co.* v. *Cram,* 80 Cal. 182, [22 Pac. 76]; *Barrows* v. *Fox,* 98 Cal. 63, [32 Pac. 811]; *Lillis* v. *Emigrant Ditch Co.,* 95 Cal. 553, [30 Pac. 1108]; also *Smith* v. *Hawkins,* 120 Cal. 86, [52 Pac. 139]; and *Steinberger* v. *Meyer,* 130 Cal. 156, [62 Pac. 483].) In all these cases the judgment was set aside because of uncertainty. In the case at bar the judgment can never be legally enforced because of its uncertainty as to the amount of water defendant must let pass to the riparian lands of plaintiffs and it could not be plead as an estoppel (Code Civ. Proc., sec. 1908), because the rights of neither party are fully determined thereby.

There are other errors complained of, mostly in relation to the findings, but as the judgment must be reversed and a new trial had, we will not consider them.

The judgment and order are reversed and the case sent back for a new trial, and it is suggested that the pleadings be so amended that the court upon a new trial may be able to determine specifically the relative rights of the parties.

Chipman, P. J., and McLaughlin, J., concurred in the judgment.