[Civ. No. 5864. Third Appellate District.—October 6, 1937.]

MARY E. FREY, Respondent, v. HENRY J. GARIBALDI, Appellant.

Snyder & Snyder for Appellant.

Henry S. Lyon and Robert E. Roberts for Respondent.

PLUMMER, J.—Action by plaintiff to quiet title to 35 inches of water measured under a four-inch pressure of water flowing in a certain stream called "Stony Gulch Creek". The plaintiff's title to the water rests upon an alleged appropriation thereof when the lands involved in this action were all a part of the public domain of the United States. Plaintiff's predecessors diverted the waters of Stony Gulch Creek some time in the late 50's or early 60's, and conveyed the same through a certain ditch known as and called "Bob Liddle Ditch". The plaintiff also asks for an injunction against the appellant from diverting by any means any of the waters flowing in said Stony Gulch Creek.

The lands belonging to the plaintiff, and upon which the waters diverted through the ditch referred to are used, are situate a mile or so below the lands owned by the appellant. The water involved is a small quantity, consisting of about one miner's inch, and is water developed by the excavation of a tunnel on lands now owned and possessed by the appellant.

The court found that the waters just referred to came from a tunnel excavated on the lands of the defendant Garibaldi, and consists of a part of the natural flow of the stream of Stony Gulch Creek, and has been a part of the natural flow of said stream since the placer mining operations therein some time in the 60's, and is part of the natural flow of the said stream, subject to appropriative right of the plaintiff and her predecessors.

At the conclusion of the plaintiff's testimony, the appellant made a motion for a nonsuit. This motion being denied, the appellant rested his case upon the testimony introduced by the plaintiff.

The testimony in this case all relates to the date of the appropriation of the waters of Stony Gulch Creek, as diverted and carried to the lands of the plaintiff by means of the Bob Liddle ditch. There is no direct testimony that the lands of the appellant herein were a part and portion of the public domain at the time of the alleged diversion of the waters of Stony Gulch Creek. We do not need to question the contention made by the respondent that the testimony is sufficient to raise the presumption that all of the lands mentioned in this action were at that date a part of the public domain of the United States; nor do we need to question the contention of the respondent that the predecessors in interest of the respondent appropriated at least 35 inches of the waters of the above-named stream, and at a time when the lands were all a part of the public domain. This, however, does not entitle the plaintiff to judgment. While the argument in this case has taken a wide range, there are certain vital facts determinative of this action, not touched by the testimony. Before discussing the failure of testimony to reach the vital point involved in this action, we will refer to the case of *Cory* v. *Smith,* 206 Cal. 508 [274 Pac. 969], where the court had under consideration an action very similar to the one here being considered. There, it was held that the appropriator must show that at the time of the appropria-

tion, the lands belonging to the defendant were part of the public domain; that the complaint should allege the fact, of which fact the complaint made no mention. It was also held that the testimony should establish such fact, and that the testimony failed to substantiate such a conclusion. It was also held that a lower appropriator could not, by adverse possession, obtain any title as against an upper riparian proprietor.

As we shall refer to it hereafter, we may also cite the case of *Haight* v. *Costanich,* 184 Cal. 426 [194 Pac. 26], to the effect that a subsequent patent from the United States Government carries the title of the patentee, by relation, back to the date of the patentee's entry upon the land, and a placer mining claim, when patented, would carry the title, by relation, back to the date when the notice of location of the premises was posted and filed.

While the contention is made that there is no showing that the appellant possesses any riparian rights, this contention overlooks the allegations contained in the third paragraph of the plaintiff's complaint, and also the testimony and patents issued to the appellant's predecessors, which fixes the status of the appellant as a riparian proprietor and forecloses any argument against his legal status as such.

The vital defect in the respondent's case in this action as to certain ownership to the waters flowing from a tunnel excavated on the appellant's lands, is the entire want of testimony establishing the time of the excavation of the tunnel from which the waters issue. No matter how ancient the appropriation of the waters of Stony Gulch Creek may be, unless the waters issuing from the tunnel referred to were in usable existence at that time and had become a part of the natural flow of the creek referred to, it is difficult to perceive just how an appropriation could be made thereof. We have not been referred to a scintilla of testimony showing the date when the water flowing from the tunnel became a usable quantity, nor have we been able to find, in a search of the transcript, a scintilla of evidence tending to establish such fact.

The record shows that in 1872 the predecessors of the appellant obtained a United States patent for a placer mining claim covering the premises here involved. It is common knowledge that preceding the issuance of a patent for a mining claim, there must have been a location in accordance with

the mining laws; and it is also common knowledge that little or no development work is ever done upon a mining claim until after the notice of location has been posted and filed. Otherwise, interlopers would always seek to establish prior rights. It is also common knowledge, and one of the requirements of the mining law of the United States, that sufficient development work must be shown to establish the mineral character of the claim involved, and satisfy the public officers that the lands for which application has been made for a placer mining patent, are more valuable for the minerals therein contained than for agricultural purposes. And as we have said, when the patent is issued, the title of the patentee and his grantees relates back to the date of the posting and filing of the notice of location. The proof of the development work of the mining claim is presented to the department of the United States having jurisdiction of the issuance of patents, and would appear to be readily ascertained by anyone interested therein.

From what has been said, the natural inference would be that the tunnel from which the waters claimed by the respondent are issuing, was excavated after the posting and filing of the notice of location of the mining claim upon which the tunnel is located. Upon the posting and the filing of the notice of location, the placer mining claim involved is for the time being no longer a part of the unappropriated public domain of the United States. We may also add that the proceedings, including the survey of the mining claim leading up to the issuance of a patent, necessarily cover a rather long period of time.

There being absolutely nothing in the complaint, and not a scintilla of testimony in the transcript supporting the finding of the trial court as to the waters of the tunnel being developed upon public lands of the United States, and thereafter incorporated into the waters of Stony Gulch Creek, there is no escape from the conclusion that the appellant's motion for a nonsuit should have been granted.

The appellant sets forth a number of other grounds for reversal of the judgment, such as that there is no showing of beneficial use of the waters alleged to have been appropriated, only conclusions being stated and no facts testified to to support the conclusions, the testimony showing simply that the water is used, first, to supply water for bathtubs, secondly, for irrigating a garden, and thirdly, for irrigat-

ing meadow lands, without any facts showing the number of acres of meadow lands irrigated, and the quantity of water necessary to irrigate the same. But from what we have stated concerning the absolute lack of testimony showing when the developed waters came into usable being, it is unnecessary to consider the points made by the appellant for reversal, or to follow his lengthy and learned argument.

It is shown by the testimony that the appellant's use of the water issuing from the tunnel consists of arranging a tank so that the waters may flow therein, and thereafter be used, and which water was used, for watering stock, which, of course, was a right possessed by a riparian owner. No contention is made that the appellant has made an excessive use thereof.

By reason of the failure of the testimony to show the acquisition of any title to the waters flowing from the tunnel, as against a riparian proprietor, it follows that the motion of the appellant for a nonsuit should have been granted.

The judgment is reversed, with directions to the trial court to sustain the appellant's motion for a nonsuit.

Pullen, P. J., and Thompson, J., concurred.